**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GE RENEWABLES US LLC,<br><br>Petitioner,<br><br>v.<br><br>HORNBECK OFFSHORE OPERATORS LLC,<br><br>Respondent. | Civil Action No. 26-cv-04014 (JSR) |

**<u>REPLY IN FURTHER SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER</u>**

Petitioner GE Renewables US LLC ("GERE") respectfully submits, as Exhibits A and B, the Declarations of Pierre Furic and Tyler Spofford, respectively, in response to the submissions yesterday evening by Respondent.

Mr. Furic's Declaration demonstrates that, contrary to Respondent's assertions, GERE's consultant Pierre Furic made clear to Hornbeck Offshore Operators LLC ("Hornbeck") that he was an advisor to GERE and did not have the authority to make the decision on whether to enter a charter and that he specifically advised Clarksons that GERE's intent was to put together contract options for management decision. *See* Exh. A. at ¶¶4, 6.

Further contrary to Hornbeck's assertions, Mr. Furic informed Hornbeck that many of Hornbeck's proposals on the negotiations would be unacceptable to GERE. *See Id.* at ¶¶7, 8. Mr. Furic expressly rejects the absurd allegation that he had said "we have a contract" to Hornbeck in a video meeting on November 18, 2025; noting that "there is no way I would have done so," because he was aware that GERE had received a potentially better proposal from

another vessel Owner. *See Id*. at ¶10. Mr. Furic also disputes Hornbeck's recitation of the video conference of November 26, 2025, at which GERE's Tyler Spofford informed Hornbeck that GERE management had decided against entering into a charter with Hornbeck. *See Id*. at ¶11.

Mr. Spofford's Declaration demonstrates that, contrary to Respondent's assertions, He had made it clear to Clarkson's that GERE would require management approval to enter into any charter agreement. *See* Exh. B. at ¶4. He also refuted Hornbeck's recitation of the video meeting of November 26, 2025, at which he informed Hornbeck that after meeting with management GERE had decided to not go further with Hornbeck. *See, Id.* at 10.

Mr. Spofford's Declaration also notes that Hornbeck's proposal of an "Early Works" agreement, under which Hornbeck asked GERE to pay for mobilization work on the vessel in advance of a charter agreement, to protect Hornbeck against the risk that the charter agreement might not be reached, would make no sense if Hornbeck believed that a charter had been reached. *See, Id.* at 11.

The October 21, 2025 email referenced in paragraph 6 of the Furic Declaration is attached hereto as Exhibit C. The November 16 and 17, 2025 emails referenced in paragraph 7 of the Furic Declaration are included as Exhibit B in the Declaration of Allen Black (ECF No. 16).

Counsel for Respondent have been served by email with this submission and we will bring hard copies to the Court hearing.

Dated: May 22, 2026

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: *<u>/s/ Aldo A. Badini</u>*

Aldo A. Badini
200 Park Avenue
New York, NY 10166-4193
ABadini@winston.com

**MILLS BLACK LLP**

Thomas L. Mills
H. Allen Black
1215 19th Street, NW
Washington, DC 20036
TMills@millsblack.com
HAblack@millsblack.com

*Counsel to Petitioner*

CC: International Court of Arbitration (via email)
Daniel Charest, Counsel to Hornbeck (via email)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GE RENEWABLES US LLC,<br><br>Petitioner,<br><br>v.<br><br>HORNBECK OFFSHORE OPERATORS LLC,<br><br>Respondent. | Civil Action No. 26-cv-04014 |

**DECLARATION OF PIERRE FURIC IN SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

PIERRE FURIC hereby states and declares as follows:

1. I am over eighteen years of age and competent to testify.

2. I am a consultant to GE Renewables US LLC ("GERE". I assisted GERE in attempting to clarify offers for the charter of offshore support vessels ("OSVs") to present for selection by GERE management.

3. In November 2025, I worked to negotiate the best offer from with Hornbeck Offshore Operators LLC ("HORNBECK") to take to GERE management.

4. I made it clear to HORNBECK throughout our dealings that I was an advisor to GERE and did not have the authority to make the decision on whether to enter a charter.

5. I am aware that GERE had engaged vessel brokers Clarksons to conduct a Request for Quotations and to assist GERE in evaluating the market. However, the negotiations regarding HORNBECK's offer were conducted by me and subject to oversight by Tyler Spofford of GERE.

6. I had specifically informed Jonathan Lints of Clarksons that our intent was to put together contract options for management decision, in an email I sent to him on Tuesday, October 21, 2025 at 8:59 am, in which I stated: "From what I see here, business cases are never clear 100% while we do not have a strong and clear contract option in hand to display for management decision."

7. On November 16, 2025, I received an email from Kevin Douglass of HORNBECK with a mark-up of a charter party form contract produced by BIMCO, known as a "SUPPLYTIME 2017" form (a "Negotiating Draft"). In an email response on November 17, 2025, I made various comments on the Negotiating Draft from Mr. Douglass, noting disagreement on various terms, including the delivery date, the financial terms related to early termination, the interest applicable, tax provisions, liquidated damages terms, the payment terms of the mobilization fee, the financial issues associated with offshore transportation of certain items, HORNBECK's proposal to increase charter hire after a period of time, the conditions when the vessel would be off-hire and the financial terms of partial off-hire conditions.

8. I also specifically noted that "GE will need confirmation of mobilization work / upgrade to be performed as per expectations before entering the charter party though."

9. I had also informed HORNBECK that the GERE would need to review certain terms before the charter draft could be presented to GERE management for approval.

10. I participated in a video meeting with Hornbeck on November 18, 2025. I did not say to HORNBECK that "we have a contract." There is no way that I would have done so. I was aware at that time that GERE had received a potentially better proposal from another vessel owner and that GERE was actively reviewing that proposal, so I could not possibly agree to a charter with Hornbeck.

11. On November 26, 2025, Mr. Spofford and I participated in a meeting with HORNBECK to advise that after discussing with management, we would not be entering into a charter with HORNBECK. Todd Hornbeck of HORNBECK became very angry, and asked Tyler Boje if he thought that Hornbeck had an agreement with GERE. Mr. Boje stated something to the effect that it depends on how you look at it. We noted that we did not and there were many things outstanding.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 22, 2026

Respectfully Submitted,

By: ______________________
Pierre Furic

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GE RENEWABLES US LLC,<br><br>Petitioner,<br><br>v.<br><br>HORNBECK OFFSHORE OPERATORS LLC,<br><br>Respondent. | Civil Action No. 26-cv-04014 |

**DECLARATION OF TYLER SPOFFORD IN SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

I, TYLER SPOFFORD hereby states and declares as follows:

1. I am over eighteen years of age and competent to testify.

2. I am the Vineyard Marine Ops Package Manager for GE Renewables US LLC (“GERE”). I oversaw GERE’s efforts to identify suitable offshore support vessels (“OSVs”) to charter by GERE to support GERE operations.

3. I engaged Clarksons Shipping Services USA LLC (“Clarksons”) to conduct a survey of available vessels and assist in the Request for Quotation (“RFQ”) process and to provide assistance reviewing potential offers.

4. I made it clear to Jonathan Lints of Clarksons that we would require management approval to enter into any charter agreement.

5. I worked with Pierre Furic, a consultant to GERE, to develop offers that could be brought to GERE management for approval.

6. In June 2025, we had initially focused on developing an offer for a three-year charter. We did not find a suitable vessel. By October 2025, we had starting working with Hornbeck Offshore Operators LLC ("Hornbeck") to develop a GERE approved form charter that could be used as needed in 2026.

7. By the end of October 2025, we recognized that we would require a vessel by mid-December, so Pierre Furic began working directly with Kevin Douglass of Hornbeck to develop a contract package that could be taken to GERE management for approval. I began working with Jason Dennis to discuss what would be required to prepare the vessel for mobilization.

8. In early November, Mr. Dennis proposed that they start to procure materials for the preparation of the vessel for mobilization, but I informed him that we could not make any commitment without a contract and management approval.

9. On November 13, 2025, we received a proposal from another vessel owner that appeared to offer a number of advantages to the Hornbeck offer that was still being negotiated. I informed Mr. Furic of the development. We decided that Mr. Furic would continue to work with Hornbeck to attempt to get their best offer so that GERE management could evaluate the offers.

10. On November 26, 2025, I engaged in a video meeting with Hornbeck to advise them that after meeting with management, we would not be going any further with Hornbeck at that time. Mr. Todd Hornbeck of Hornbeck became irate, and asked Tyler Boje's opinion whether he thought that Hornbeck had reached a deal with GERE. Mr. Boje stated something to the effect that he thought the parties were reaching an agreement. We did not agree. I believe we said something to the effect that management had decided not to proceed with Hornbeck.

11. In response to Hornbeck's complaints, I believe I may have mentioned the "Early Works Agreement" that Hornbeck had proposed, under which GERE would pay Hornbeck for the

procurement and preparation of materials for mobilization, so that in the event a charter was not reached, Hornbeck would be compensated for preparation expenses. I believe I mentioned that they knew we did not have a charter, because if we did, there would have been no reason for them to have proposed an Early Works Agreement on November 17, 2025.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 22, 2026

Respectfully Submitted,

By: Tyler Spofford
Tyler Spofford

# EXHIBIT C

**From:** Furic, Pierre (GE Vernova, consultant)
**To:** Jonathan Lints; Tyler Boje; Spofford, Tyler (GE Vernova)
**Subject:** RE: EXT: RE: EXT: FW: HOS Rocinante - Contractual Discussion
**Date:** Tuesday, October 21, 2025 8:59:00 AM
**Attachments:** FW EXT RE EXT Charter Party.msg
image002.png
image003.png

---

Hi Jonathan,

The contract of this email sent earlier is actually made from the GE template.
Part 1 has been updated with what GE are asking today.
In Part 2, changes have been made only on commercial topics that will not impact GE legal team opinion.
I confirm we can work with this one and that a meeting with Kevin Douglas would be good to be on the same line.
We can also start from scratch but HOS has already made some deviations and even though some of them are Rocinante specific, there is no reason why others would be different for Briarwood.

From what I see here, business cases are never clear 100% while we do not have a strong and clear contract option in hand to display for management decision.

It looks necessary to align each other today and to progress on this.
Are you free to talk in the morning your side ?

Pierre

Pierre FURIC - Offshore Wind
+33 6 73 20 41 86 - pierre.furic@gevernova.com